IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>JOHNNIE B. DAVIS, JR.,<br><br>        Defendant. | 8:13CR85<br><br>MEMORANDUM AND ORDER |

This matter is before the court on defendant's objection (Filing No. 25) to the magistrate judge's findings and recommendations (Filing No. 24). The magistrate judge denied defendant's motion to suppress statements and evidence (Filing No. 14). The defendant received a grand jury indictment for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2). Filing No. 1. Pursuant to 28 U.S.C. § 636(b)(1)(A), this court conducts a *de novo* review of the magistrate judge's findings to which the defendant objects. *United States v. Lothridge,* 324 F.3d 599, 600-01 (8th Cir. 2003). The court has reviewed the entire record, including the transcript of the suppression hearing. Filing No. 23. The court concludes that the magistrate judge's findings and recommendations should be adopted in their entirety.

## BACKGROUND

The court will briefly summarize the facts, as there is little dispute over them. On January 1, 2013, Brian Schuster (a police officer for the Omaha Police Department) and his partner responded to a call regarding an armed disturbance at a residence. As he approached the house in question, Officer Schuster heard people arguing loudly through an open garage door. The officers drew their weapons and announced their

presence. A visibly intoxicated woman came to the garage door and told Officer Schuster that her son, Johnny B. Davis, Jr. ("Davis"), was inside the house armed with a shotgun. The officers announced themselves a second time. Soon after, Davis himself appeared at the door unarmed. Davis did not appear to be intoxicated. Officer Schuster immediately handcuffed Davis and took him to the squad car. Officer Schuster then asked Davis for his full name, date of birth, and place of residence. Davis provided this information, and Officer Schuster entered it into a database to confirm that there were no outstanding warrants for Davis's arrest.

Brandon Hahn (also a police officer for the Omaha Police Department) arrived on the scene with his partner approximately one minute after Officer Schuster. Unlike Officer Schuster's vehicle, Officer Hahn's squad car contained an audio/video recording device (Exhibit 2). With Davis safely detained in the back of Officer Schuster's squad car, Officer Hahn and his partner conducted a protective sweep of the house. Officer Hahn located Davis's stepfather, Billy White ("White"), and began questioning him. White told Officer Hahn that Davis wielded a shotgun at one point during the argument and threatened to commit suicide using it. White stated that Davis even went so far as "rack" a shell into the chamber of the pump-action weapon.

White then signed a permission to search form, allowing the officers to search his residence. White described two additional firearms that were in the house. White asked the officers to take these weapons for safekeeping. The officers searched the majority of the house and found the two additional firearms White mentioned. The officers failed to find Davis's shotgun, but did find evidence of the weapon in the form of

2

shells and empty casings. The only part of the house that the officers were unable to search was Davis's room, as the door to it was padlocked shut.

The officers returned to Officer Schuster's police cruiser. Officer Hahn explained to Davis that the officers were concerned that he may be a danger to himself and others and asked him if he owned a shotgun. Davis insisted that he was not a danger to himself and asked to be released so that he could spend the night at another location. Officer Hahn declined and asked Davis for consent to search his padlocked room. Davis did not respond. Officer Hahn informed Davis that, if he refused to consent, the officers would obtain a search warrant. Davis remained silent. Officer Hahn told Davis to "take a minute to think about it" and left to converse with the other officers.

While waiting for Davis to make up his mind, the officers discussed how they would go about obtaining a search warrant for the room. They also discussed the possibility of placing Davis in emergency protective custody so he could not hurt himself or others. As the discussion continued, one of the other officers stated that he believed Davis was already a convicted felon. Officer Hahn returned to the car housing Davis a few minutes later. At that time, Davis told Officer Hahn that he "would find what they were looking for" in Davis's room and agreed to sign a consent form allowing the officers to search the area (Exhibit 1). After hearing this, Officer Hahn informed the other officers that Davis consented to a search. Officer Hahn then moved his squad car and turned the emergency lights off, automatically disabling the vehicle's recording device (Exhibit 2).

The officers brought Davis to the door of his locked room. There, the officers unlocked the padlock using a multi-tool. Once in the room, Davis directed the officers to

a utility closet. The closet contained the shotgun in question. The officers seized the firearm and brought Davis in for booking.

## MAGISTRATE JUDGE'S FINDINGS

The magistrate judge found that the officers had a reasonable, articulable suspicion that Davis was potentially armed and dangerous before they detained him. Filing No. 24 at 6. Therefore, the judge determined that his detention was lawful. *Id.* The magistrate judge also found that the questioning of Davis never rose to the level of an "interrogation." *Id.* at 8. The judge noted that the officers were not trying to elicit incriminating information from Davis during the questioning, but were attempting to determine the location of a firearm that may pose a danger. *Id.* Consequently, the magistrate judge determined that the officers were not required to advise Davis of his *Miranda* rights. *Id.* Finally, the magistrate judge determined that Davis freely consented to a search of his room. *Id.* at 10.

## DISCUSSION

### A. Detention

Davis asserts that his detention was unlawful. He contends that there was not probable cause for the officers to detain him. Investigatory detentions are seizures of a limited scope and duration commonly employed to ensure police safety when officers wish to further investigate a matter while a potentially dangerous individual is present. *See generally Terry v. Ohio,* 392 U.S. 1 (1968); *United States v. Sokolow*, 490 U.S. 1 (1989). Investigatory detentions do not necessarily require probable cause. *Sokolow* 490 U.S. 1 at 7. Rather, it is enough to show that the detention is supported by a reasonable, articulable suspicion of criminal activity. *Id.* A reasonable suspicion of

criminal activity is established by considering the totality of the circumstances. *United States v. Maltais*, 403 F.3d 550, 555 (8th Cir. 2005). Additionally, "police officers may handcuff a suspect and place him in a patrol car during an investigative stop [investigatory detention] in order to protect their personal safety and maintain the status quo." *United States v. Robinson*, 670 F.3d 874, 877 (8th Cir. 2012).

In this case, the officers detained Davis for just over an hour. The officers also used appropriate methods for the detention considering the threatening nature of the situation. Both of these factors support the argument that Davis was subject to an investigatory detention (requiring reasonable suspicion) rather than a standard detention (requiring probable cause). There is more than enough evidence on record to establish that Officer Schuster had reasonable suspicion to detain Davis. First, the officers were responding to a report concerning an "armed disturbance." Second, the officers heard loud yelling as they approached the residence, partially corroborating the report. Finally, Davis's mother stated that her son was armed when she appeared at the garage door. Thus, considering the totality of the circumstances, the officers had reasonable suspicion to believe an armed disturbance was in progress. Additionally, the officers had reasonable suspicion that Davis himself was armed and dangerous. Therefore, his detention was not only lawful but also essential to maintaining the safety of all parties present.

### B. *Miranda*

Davis seeks to suppress statements he made to officers because he was never advised of his *Miranda* rights while detained. Officers are only required to advise a defendant of his *Miranda* rights if he is subject to a custodial interrogation. *See Miranda*

*v. Arizona*, 384 U.S. 436 (1966). It is uncontested that Davis was in custody and never read his *Miranda* rights. The issue is whether the officers subjected him to an interrogation while in custody. Not all police inquiries rise to the level of an interrogation. Questioning only rises to the level of an interrogation when police officers use "words or actions . . . that they *should have known* were reasonably likely to elicit an incriminating response." *United States v. Orr*, 636 F.3d 944, 954 (8th Cir. 2011) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 302 (1980) (emphasis in original). Additionally, police inquiries "normally attendant to arrest" do not require officers to advise a defendant of their *Miranda* rights. *Innis*, 446 U.S. at 301.

In questioning Davis, the officers did not attempt to elicit incriminating statements from him. Officer Schuster's initial inquiries were basic questions "normally attendant to arrest" and not expected to bring about an incriminating response. Likewise, Officer Hahn's subsequent questions regarding the location of the shotgun and attempts to obtain consent to search Davis's room were not intended to elicit incriminating statements. This is because the officers already found substantial evidence that the firearm was present somewhere in the house and there was a high probability that Davis already threatened to harm himself with the weapon. Therefore, the motivation for Officer Hahn's questioning was to determine the location of the shotgun in order to confiscate it, ensuring Davis's safety and the safety of others in the residence. It is also significant that the charge against Davis in this case is "felon in possession of a firearm." However, the court notes that Officer Hahn testified that he did not know Davis was a felon at the time of the questioning. Thus, it was unlikely that Officer Hahn was attempting to elicit incriminating statements from Davis in this regard. Consequently,

6

Davis was in custody but never interrogated. Tthe court finds that the officers were not required to advise him of his *Miranda* rights.

### C. Consent to search

Davis contends that he did not give the police officers consent to search his room voluntarily. Normally, police officers are required to obtain a warrant to search a residence. *United States v. Farnell*, 701 F.3d 256, 261 (8th Cir. 2012) (quoting *Mincey v. Arizona*, 437 U.S. 385, 390 (1978)). Consent is an exception to the warrant requirement, however. *Id.* at 262. Consent is only valid if it is freely and voluntarily given. *Id.* at 263. Thus, a consent may not be the product of any "implicit or explicit coercion." *Id.* (quoting *United States v. Castellanos*, 518 F.3d 965, 969 (8th Cir. 2008). Finally, the determination that consent is valid must be based on the totality of the circumstances in the case. *Id.*

In this case, Officer Hahn explained to Davis that the officers needed to search his room for the shotgun because they believed he might be a danger to himself and others. Officer Hahn explained that, if Davis did not give his consent to search, the officers would acquire a warrant. Officer Hahn did not raise his voice and his tone remained conversational throughout the discussion. When Davis refused to answer, Officer Hahn stated that he would give Davis some time to think about his decision. The facts do not show that the officers used any coercive tactics. Thus, Davis's consent was voluntary and freely given, making it a valid waiver of the warrant requirement.

## CONCLUSION

For the reasons stated above, the court finds that Davis's detention was lawful. The court also finds that Davis was not subject to a true interrogation while in custody, meaning the officers were not required to advise him of his *Miranda* rights. Finally, the court finds no evidence to suggest Davis's consent was involuntary or coerced. In sum, on its *de novo* review, this court agrees with the magistrate judge that the defendant's motion to suppress should be denied.

THEREFORE, IT IS ORDERED:

1. The magistrate judge's findings and recommendations (Filing No. 24) are adopted in their entirety.

2. The defendant's motion to suppress (Filing No. 14) is denied.

3. The objections of the defendant (Filing No. 25) are overruled.

Dated this 15th day of July, 2013.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge

8